UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL E. ETAPA,<br><br>                Plaintiff,<br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security, [1]<br><br>                Defendant. | Case No. 3:12-cv-05343-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On January 23, 2009, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that he became disabled beginning October 12, 2000, due to a back injury, high blood pressure, depression, chronic pain, headaches,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**
ORDER - 1

anxiety, dental and alcohol problems, neck and chest pain, and dizziness. See Administrative Record ("AR") 18, 94, 98, 175. Both applications were denied upon initial administrative review on May 14, 2009, and on reconsideration on September 8, 2009. See AR 18, 63, 66, 71, 73. A hearing was held before an administrative law judge ("ALJ") on January 11, 2011, at which plaintiff appeared without counsel and testified and at which a vocational expert also appeared and testified. See AR 46-58.

In a decision dated January 28, 2011, the ALJ determined plaintiff to be not disabled. See AR 18-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 23, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On May 17, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #5. The administrative record was filed with the Court on September 14, 2012. See ECF #12. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings because the ALJ erred: (1) in evaluating the medical opinion source evidence in the record; (2) in discounting plaintiff's credibility regarding his subjective complaints; and (3) in finding him to be capable of returning to his past relevant work. For the reasons set forth below, the Court agrees the ALJ erred in determining plaintiff to be not disabled, and therefore finds that the Commissioner's decision should be reversed, and that this matter should be remanded for an award of benefits.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

ORDER - 4

(citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Mangin

In terms of the objective medical evidence in the record, plaintiff first challenges the ALJ's following findings:

> . . . Teresa Mangin, M.D., performed a consultative examination of the claimant in September 2008, and noted the claimant's daily activities consist of pulling weeds, washing the dishes, and performing other household tasks (8F/2). Dr. Mangin opined the claimant can stand and walk for less than two hours in an eight-hour workday; his ability to sit is unrestricted; he requires an assistive device for even short distances, and should use a cane; the amount of weight he can lift is without restrictions, but he can only carry 20 pounds frequently and 50 pounds occasionally; he can rarely bend, stoop, and crouch and, the claimant has no manipulative limitations (8F/5). The undersigned gives Dr. Mangin's opinions only some weight, because only some of her opinions are in accordance with her findings and the medical record as a whole. For example, the fact [that] the claimant can pull weeds and wash dishes, suggests he is capable of more than rare bending, stooping, and crouching. In addition, the doctor's opinion [that] the claimant can carry up to

ORDER - 5

> 50 pounds is in conflict with her opinion that he needs an assistive device to walk even short distances. . . .

AR 26. The Court agrees the ALJ's stated reasons for rejecting Dr. Margin's opinion are not wholly sufficient. The opinion of a physician can be rejected on the basis that other evidence of the claimant's ability to function, including his or her reported daily activities, contradicts that opinion. See Morgan, 169 F.3d at 601-02. Here, however, the record fails to show plaintiff has performed activities such as weeding and washing dishes to an extent necessarily inconsistent with an ability to rarely bend, stoop and crouch. See AR 130-34, 150-54, 182-86, 286. In this regard, therefore, the ALJ erred. As such, the Court finds the ALJ did not adequately explain why those postural limitations were not accepted.

On the other hand, the Court finds the ALJ did not err in stating Dr. Margin's opinion that plaintiff could carry up to 50 pounds conflicts with her opinion that he needed an assistive device to be able to walk even short distances. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical opinion source's functional assessment and his or her clinical notes, recorded observations and other comments regarding claimant's capabilities "is a clear and convincing reason for not relying" on that assessment); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989). Accordingly, the ALJ did not improperly decline to adopt the limitations concerning plaintiff's ability to walk, lift and carry or use of an assistive device.

B.    Dr. Merrill

Plaintiff next argues the ALJ erred in finding as follows:

> Jeffrey Merrill, M.D., submitted a physical residual functional capacity assessment on behalf of [the state evaluating agency] in March 2009. Dr. Merrill opined the claimant can occasionally lift 20 pounds, and frequently lift 10 pounds; he can stand, walk, and sit for about six hours in an eight-hour day; he can frequently balance and stoop; he can occasionally climb ramps and stairs; he can never climb ropes, ladders, and scaffolds; he can never kneel, crouch, and crawl; and, he should avoid concentrated exposure to

ORDER - 6

> extreme cold and vibrations (12F/2-5). The undersigned gives Dr. Merrill's opinion only some weight, because only some [of] his opinions are supported by the medical records as a whole. As discussed above, the claimant's activities of daily living, as demonstrated by his ability to pull weeds, suggests he is capable of kneeling, crouching, and crawling. Finally, the doctor's opinion concerning the claimant's environmental limitations are not supported by the medical record.

AR 27. The Court agrees that here too the ALJ failed to provide sufficient reasons for rejecting Dr. Merrill's opinion. As discussed above, the record fails to show plaintiff performed activities of daily living such as weeding at a level implied by the ALJ's findings. Further, the ALJ's statements that "only some" of Dr. Merrill's opinions "are supported by the medical records as a whole" and that the environmental limitations "are not supported by the medical record," also is insufficiently specific to allow for proper judicial review. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).[3] That is, it is not at all clear what part or portions of the medical evidence in the record the ALJ relied to so find here.

     C.     Dr. Colville, Dr. Staker and Dr. Muncy

Plaintiff also takes issue with the ALJ's stated reasons for rejecting three of the other medical source opinions in the record concerning plaintiff's physical capabilities, which read in relevant part:

> The record also contains other brief opinions, which are not supported by the medical record as a whole. For example, in November 2000, Dr. [Mark R.] Colville opined the claimant was limited to non-weight bearing jobs (11F/5). In addition, in October 2003, Dr. [Lynn L.] Stalker [sic] opined the claimant was not employable, at least not for heavy-duty work (2F/4). Finally, Gerald Muncy, M.D., opined in a letter dated December 22, 2010, the claimant will

---

[3] As the Ninth Circuit in Embrey stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Id. at 421-22 (internal footnote omitted).

ORDER - 7

>note be able to perform physically demanding jobs, but could perform sedentary work (30F/1). The undersigned gives the opinions of Dr. Colville, Dr. Stalker [sic], and Dr. Muncy little weight for several reasons. First, their opinions are vague and nonspecific. Second, their opinions are not in accordance with the claimant's activities of daily living. Lastly, they do not take into account the claimant's conservative treatment history.

AR 28. The Court again agrees with plaintiff that these reasons do not withstand scrutiny. First, once more as discussed above, the evidence in the record regarding plaintiff's daily activities do not show that they have been performed at a level necessarily inconsistent with the severity of limitation assessed by these three medical sources. Second, the Court finds nothing either vague or nonspecific about those assessments.

Dr. Colville, for example, stated in no uncertain terms that plaintiff "will be nonweight bearing." AR 356. Dr. Staker found plaintiff to be restricted to sedentary work, which is defined on the form she completed to include the ability to "lift 10 pounds maximum and frequently lift and/or carry such articles as dockets, ledgers, and small tools." AR 206. That definition also states that "[a]lthough a sedentary job involves sitting, a certain amount of walking and standing may be necessary." Id. Dr. Muncy for his part opined that plaintiff would "not be able to work in a physically demanding area" or perform "any physical labor," due to the chronic pain he suffers from his degenerative disc and joint disease. AR 584. Dr. Muncy went on to state:

>. . . He also has depression which makes it difficult for him to find motivation and energy, especially in the work environment. It is possible that he may be able to be trained to other more sedentary types of work if education is made available. He has undergone multiple treatments for his chronic illnesses and it does not look like he will improve enough to do substantially better than his current baseline state. . . .

Id. It is entirely unclear what the ALJ found to be impermissibly vague or nonspecific here, and his own lack of specificity in this regard constitutes error. Lastly, as explained in greater detail below, given that plaintiff has undergone surgery and received injections for his physical

ORDER - 8

1   impairments and pursued both prescription medications and therapy for his mental impairments,

2   and that the ALJ once more has failed to explain what additional treatment plaintiff should have

3   sought, here too this stated reason is insufficiently specific.

4       D.       Dr. Johns

5   Plaintiff further argues the following findings made by the ALJ were improper:

6
7       A psychological consultative examination of the claimant was performed by
    Donna Johns, Psy.D., in April 2009.  Dr. Johns opined the claimant is capable
8       of reasoning, but is not likely able to engage in sustained work related
    activities at this time as a result of his reported physical instability (14F/3).
9       However, the doctor also indicated there is no indication the claimant would
    be unable to engage in sustained employment as a result of diminished
10      capacity due to mental health problems if he follow-up with treatment (14F/3).
    The undersigned gives Dr. Johns's opinion only some weight because she
11      relied exclusively on the claimants own statements concerning his physical
    limitations.  In addition, her opinion of the claimant's physical limitations is
12      outside her scope of expertise as a psychologist.  However, the undersigned
    finds her opinions regarding the claimant's mental capacity are supported by
13      his ability to manage a savings account and read books.

14  AR 26.  The Court finds no error here.  First, given that Dr. Johns is a psychologist, the ALJ was

15  not remiss in discounting her opinions concerning the impact of plaintiff's physical impairments,

16  as this clearly is outside her area of expertise.  Indeed, given that Dr. Johns has not been licensed

17  as a medical doctor she is not an acceptable medical source on the issue of such impact, and the

18  ALJ therefore would be entitled to give that portion of her opinion "no" weight. See 20 C.F.R. §

19  404.1513(a), (d), § 416.913(a), (d) (licensed physicians and licensed or certified psychologists

20  are "acceptable medical sources").  Thus while as discussed in greater detail below the ALJ did

21  not give sufficient reasons for discounting plaintiff's credibility – and therefore cannot use that

22  as basis for rejecting the opinion of Dr. Johns – again the above-stated reason is sufficient as to

23  the physical limitations portion of that opinion.  Further, as noted by the ALJ, at least from the

24  standpoint of plaintiff's mental health condition, that opinion would not prevent him from being

ORDER - 9

able to be employed with continued treatment. See AR 371.

### E. Dr. Regets

Lastly with respect to the medical opinion source evidence in the record, plaintiff argues the ALJ erred in finding as follows:

> A mental residual functional capacity assessment was also submitted to [the state evaluating agency] by Michael Regets, Ph.D., in May 2009. Dr. Regets opined the claimant demonstrates an ability to perform simple repetitive tasks, and some complex tasks; he is able to maintain concentration in two-hour intervals in an eight-hour day; he is able to interact with others; and, the claimant would have some difficulty adapting to changes in a competitive environment (14F/3). The undersigned gives Dr. Regets opinion some weight because it is generally consistent with the medical record as a whole. However, the doctor's opinion concerning the claimant's ability to adapt to changes in a competitive work environment are not supported by the medical record as a whole. For example, the record discloses the claimant attends church, is able to manage a savings account, and is able to use a checkbook/money order. These activities suggest the claimant is not as limited as the doctor opined. The undersigned did give the claimant the benefit of the doubt and limited [him] to only simple repetitive tasks.

AR 27. Again, the Court agrees the ALJ provided insufficient reasons for rejecting this medical opinion source. The ability to attend church does not necessarily indicate a lack of problems in plaintiff's ability to maintain socially appropriate behavior or respond appropriately to changes in a work setting, particularly given that the record fails to show that he went all that frequently, or that he spent a significant amount of time there when he did go or how he behaved once there. See AR 134, 154, 186, 373. Nor is the ability to manage a savings account or use a checkbook itself necessarily an indication that plaintiff can maintain attention or concentration for extended periods of time. See AR 372.

### II. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

ORDER - 10

In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted) [Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted)].  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part on the basis that his subjective complaints and allegations of disabling limitations are not consistent with the objective medical evidence in the record. See AR 24-25.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement.

ORDER - 11

Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  As discussed above, though, the ALJ largely erred in rejecting much of the medical opinion source evidence in the record.  Thus, while as noted by the ALJ there is medical evidence in the record indicating plaintiff is not as restricted as alleged – including evidence of significant improvement from treatment received for his back pain (see AR 24; Morgan, 169 F.3d at 599) – it is far from clear that the medical evidence overall fails to support plaintiff's allegations here.

The ALJ also discounted plaintiff's credibility concerning his mental impairments and limitations on the basis of his activities of daily living.  See AR 24-25.  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination."  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, such activities can "meet the threshold for transferable work skills."  Id.  Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting."  Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment."  Id.  In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  Reddick, 157 F.3d at 722.  Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony."  495 F.3d at 639.  As discussed above, though, the evidence in the record fails to show plaintiff engaged activities necessarily inconsistent with the many of the medical opinion sources in the record.  Nor does that evidence necessarily show plaintiff performed household chores for a substantial part of his day or that the activities he engaged in are necessarily transferable to a work setting.  That evidence also does not necessarily contradict

ORDER - 12

plaintiff's other testimony.

The ALJ further discounted plaintiff's credibility for the following reasons:

> The course of medical treatment and the use of medication in this case are not consistent with the claimant's alleged conditions. While the claimant asserts numerous subjective complaints, the record reveals he has received only conservative and routine treatment. There is no evidence of significant side effects from his medications. The claimant has not been hospitalized for any significant period of time. This level of treatment suggests the claimant's impairments do not result in significant functional limitation, which precludes him from engaging in basic work activity.

AR 25. Evidence of only having received or pursued conservative treatment can constitute a valid reason for finding a claimant to be less than fully credible concerning his or her allegations of disabling limitations. See Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation). Such is not the case here.

As discussed above, the record shows plaintiff has undergone surgery and received injections for his physical impairments and sought mental health counseling and been prescribed medications for his mental health impairments. See AR 285, 352, 354-56, 369, 423, 428, 454-58, 479, 489, 515, 536, 538, 540-42, 544, 547-48, 585-91, 594. Also as discussed above and pointed out by plaintiff, other than the fact that plaintiff has not been hospitalized – and no showing has been made that a claimant must be hospitalized in order to be found to have received non-conservative treatment – the ALJ fails to explain what additional measures should have been pursued here. In addition, as also pointed out by plaintiff, to the extent even greater treatment should have been sought, there is at least some evidence plaintiff may have had a valid reason for

ORDER - 13

not doing so, i.e., an inability to afford it. See AR 223-24, 510.[4] Contrary to the ALJ's findings, furthermore, there also is some evidence that plaintiff experienced significant medication side effects. See AR 369, 510.

The Court agrees as well that the ALJ erred in rejecting plaintiff's credibility on the following basis:

> The undersigned also considered the claimant's alcohol addiction in assessing his credibility. A drug assessment of the claimant was performed in December 2008, which indicates his alcohol abuse caused him to lose employment (9F/1). In addition, treatment notes dated September 2006, recite the claimant was abusing alcohol and using it inappropriately to treat his pain (6F/1). The undersigned finds the claimant's alcohol addiction reflects unfavorably on his credibility because it shows he has not put forth a good faith effort to achieve medical improvement.

AR 25. While the record does show that plaintiff has had problems with alcohol abuse, the ALJ fails to point to any specific evidence that those problems actually resulted in plaintiff failing to put forth a good faith effort to achieve medical improvement. Indeed, as discussed above, there is substantial evidence that plaintiff pursued various modes of treatment for his impairments and as the ALJ himself noted, such treatment resulted in significant improvement in at least some of his symptoms. In addition, the evidence in the record indicates plaintiff has been clean and sober since December 2008 (see AR 223, 343-47, 369, 371, 396, 477-78, 543) – nearly two years prior to the date of the ALJ's decision – and that any inappropriate use of alcohol by plaintiff to treat his pain was due to the fact that he had "no other options" at the time due to him "being unable to purchase medications" (AR 223).

The ALJ provided two other reasons for discounting plaintiff's credibility, both of which

---

[4] See Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *7 (ALJ "must not draw any inferences" about claimant's symptoms and their functional effects from failure to pursue treatment, "without first considering any explanations" claimant "may provide, or other information in the case record, that may explain" that failure).

ORDER - 14

the Court overall finds to have been proper.  For example, the ALJ properly found plaintiff to be less than fully credible on the basis of his theft conviction, as that clearly implicates plaintiff's reputation for honesty. See AR 26; Smolen, 80 F.3d at 1284 ("ordinary techniques of credibility evaluation" may be considered, such as reputation for lying).  In addition, a claimant's poor work history has been found to be a proper basis for discounting a claimant's credibility regarding his or her alleged disability as well. See AR 26; Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found extremely poor work history and lack of propensity to work in her lifetime negatively affected claimant's credibility regarding inability to work).

Nevertheless, as discussed above, the vast majority of the ALJ's stated reasons for not finding plaintiff to be completely credible are not supported by the record.  Thus, even though the fact that some of an ALJ's reasons for discounting a claimant's credibility are improper does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, such is not the case here. Tonapetyan, 242 F.3d at 1148.  Accordingly, the Court declines to uphold that determination in this matter.

III.     The ALJ's Step Four Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can

ORDER - 15

do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . except: he can lift 20 pounds occasionally, and 10 pounds frequently; he cannot carry more than incidental items; he cannot walk on uneven surfaces; he can sit or stand six out of eight hours each; he can walk for two out of eight hours; and, he is limited to simple repetitive tasks.**

AR 23 (emphasis in original). Based on this RFC assessment and the testimony of the vocational expert, the ALJ found plaintiff to be capable of performing his past relevant work as an injection molding machine operator and a wood products stacker, both as they are "actually and generally performed." AR 29. Plaintiff argues the ALJ could not rely on the vocational expert's testimony in so finding here, because that testimony conflicts with the definition of these jobs contained in the Dictionary of Occupational Titles ("DOT"), which states that they both require the ability to perform medium work, and the ALJ failed to elicit a reasonable explanation for that conflict from the vocational expert. See DOT 556.685-066, 1991 WL 683489; DOT 569.685-066, 1991

ORDER - 16

WL 683880.[5]

The claimant has the burden at step four of the disability evaluation process to show that he or she is unable to return to his or her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Defendant does not disagree with plaintiff that the descriptions of the above two jobs contained in the DOT conflicts with the vocational expert's testimony that those, jobs, as described by plaintiff, were performed at the light exertional level (see AR 55-56), and that the ALJ did not resolve that conflict. As defendant points out and as noted above, however, the ALJ also found plaintiff to be capable of performing his past relevant work as it was actually performed, that is, at the light exertional level. See AR 122-23. As such, although the ALJ did err in finding plaintiff could perform his past relevant work as it is generally performed given the conflicting information contained in the DOT,[6] he did not do so in regard to how it was actually performed.[7]

That being said, given the errors noted above in regard to the ALJ's evaluation of the objective medical evidence in the record and his assessment of plaintiff's credibility, his step

---

[5] The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ also has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. The ALJ also must explain how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

[6] At step four of the sequential disability evaluation process, the Commissioner relies primarily on the DOT "about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704 *2.

[7] See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (recognizing that to find claimant not disabled at step four, ALJ must find he or she is able to perform either "[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy"); see also Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 200) (claimant has burden of proving he or she cannot perform his or her past relevant work either as actually performed or as generally performed in national economy); SSR 82-61, 1982 WL 31387 *2 ("[I]f the claimant cannot perform the . . . functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'").

ORDER - 17

four determination cannot stand.  Defendant argues the ALJ's error in finding plaintiff to be capable of performing his past relevant work is harmless, because the ALJ would have gone on to find him not disabled at step five of the sequential disability evaluation process.  But given the errors committed by the ALJ in this matter discussed above, it is far from clear that had he not committed those errors he would have done so.  Accordingly, the Court cannot find the ALJ's step four error to be harmless and declines to do so.[8]

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

---

[8] Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

ORDER - 18

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental and physical impairments and limitations, his credibility and his ability to perform his past relevant work, remand for further consideration of these issues is warranted. Further, if on remand it is determined that plaintiff cannot perform his past relevant work, the Commissioner shall proceed on to step five of the sequential disability evaluation process to determine if he can perform other work existing in significant numbers in the national economy.

## CONCLUSION

For the reasons discussed above, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Commissioner's final decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 21st day of May, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 19